## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GUY MADISON NEIGHBORS,

      Plaintiff,

v.

STATE OF KANSAS, et al.,

      Defendants.

Case No. 16-cv-04023-DDC-KGS

## MEMORANDUM AND ORDER

Pro se plaintiff Guy Neighbors[1] brings this action against seven defendants:  the State of Kansas; three Assistant United States Attorneys—Marietta Parker, Terra Morehead, and Christopher Oakley; David Nitz, a postal inspector; Robert Jackson, an IRS agent;[2] and a postal inspector whose last name is Osborne but whose first name is unknown.  Plaintiff's Complaint asserts that defendants, either individually or through a conspiracy, deprived him of various rights under the Constitution of the United States.  Specifically, the court construes plaintiff's Complaint as asserting causes of action under 42 U.S.C. § 1985 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971),[3] against defendants in their individual and official capacities.

---

[1] Because plaintiff proceeds pro se, the court construes his pleadings liberally and holds them to a less stringent standard than those drafted by lawyers.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the court does not assume the role of advocate for plaintiff.  *Id.*  Nor does plaintiff's pro se status excuse him from complying with the court's rules or facing the consequences of noncompliance.  *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[2] Plaintiff's Complaint references Mr. Jackson initially as "Ron Jackson," but later references him as "Robert Jackson."  Doc. 1 at 1, 6, 19.  Mr. Jackson's first name is, in fact, Robert.  Doc. 79 at 1 n.2.

[3] Causes of action brought under this case are known as *Bivens* actions.  *Bivens* actions are "the federal analog to § 1983 suits against state officials."  *Soto-Torres v. Fraticelli*, 654 F.3d 153, 158 (1st Cir. 2011).

On January 23, 2017, the court dismissed plaintiff's claims against the State of Kansas and Mr. Oakley.  Doc. 92.  And, on January 19, 2017, the court ordered plaintiff to submit an address where the United States Marshal could serve defendant Osborne properly.  Doc. 91.  Plaintiff has until February 2, 2017, to comply with that Order.  So, the only parties before the court today are Ms. Parker, Ms. Morehead, Mr. Nitz, and Mr. Jackson (collectively "defendants").

This matter comes before the court on seven motions:

1. Plaintiff's Motion to Transfer Case (Doc. 54);

2. Defendant Terra Morehead's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 17);

3. Defendant Marietta Parker's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 74);

4. Defendant Robert Jackson's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 78);

5. Defendant David Nitz's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 81);

6. Plaintiff's Motion for Review (Doc. 56); and

7. Plaintiff's Notice[4] (Doc. 88).

## Background

Because defendants bring their Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), the court takes these facts from plaintiff's Complaint.  *See S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014); *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

---

[4] Although docketed as a notice, the court construes this filing, doc. 88, as a motion because it appears to seek some type of relief.

Between 2006 and 2014, Mr. Neighbors was a defendant in four federal criminal cases.[5] Those cases were:

1.  *United States v. Neighbors*, Case No. 06-cr-20171 ("Unlawful User Case")

2.  *United States v. Neighbors*, Case No. 07-cr-20073 ("Controlled Substance Case")

3.  *United States v. Neighbors*, Case No. 07-cr-20124 ("Money Laundering Case")

4.  *United States v. Neighbors*, Case No. 08-cr-20105 ("Obstruction Case")

Throughout these cases, our court issued several search and arrest warrants, granted Mr. Neighbors pre-trial release, revoked his pre-trial release, held three competency hearings, and issued a temporary restraining order preventing Mr. Neighbors from blogging about his cases. None of the criminal cases proceeded to trial and Mr. Neighbors never pleaded guilty to any of their charges. Eventually, our court dismissed all four cases.

Plaintiff's claims here arise from defendants' connections to one or more of his criminal cases. Plaintiff alleges conspiracy claims under 42 U.S.C. § 1985 against defendants in both their official and individual capacities. He also alleges constitutional and tort claims against defendants. The court construes plaintiff's constitutional and tort claims as *Bivens* claims against defendants in both their official and individual capacities. Specifically, plaintiff alleges that Ms. Parker and Ms. Morehead—the Assistant U.S. Attorneys assigned to all four of plaintiff's federal criminal cases (collectively "the Prosecutors")—violated his First, Fourth, and Fifth Amendment

---

[5] The court takes judicial notice of the four federal criminal proceedings against plaintiff and their related records. *See Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) ("[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." (citing *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001). Because the court may consider judicially noticed facts at the motion to dismiss stage, it need not convert defendants' motions to dismiss into ones for summary judgment. *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004) (permitting judicial notice of facts in motions to dismiss). Moreover, plaintiff references the docket and filings in these criminal proceedings throughout his Complaint, thus providing the court with a second basis for considering those filings without converting defendants' motions to dismiss into motions for summary judgment. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (explaining that courts may consider documents referenced in a complaint at the motion to dismiss stage).

rights.  Plaintiff also alleges malicious prosecution and retaliatory prosecution claims against the Prosecutors.  Plaintiff alleges that Mr. Nitz and Mr. Jackson—federal officials involved in acquiring, serving, or executing search and arrest warrants in some or all of plaintiff's federal criminal cases—violated his Fourth and Fifth Amendment rights.  Plaintiff also alleges malicious prosecution claims against Mr. Nitz and Mr. Jackson.[6]

## Analysis

### I.      Plaintiff's Motion to Transfer Case

On August 24, 2016, plaintiff filed a motion asking the court to transfer his case to the District of Colorado because, he contends, the court and all judges in the District of Kansas cannot be impartial in his case.  Doc. 54.  Because the motion, entitled "Motion to Transfer Case," is not clear, the court construes it as one asking the court and all judges in the District of Kansas to recuse under 28 U.S.C. § 455(a) and as one asking to transfer the case under 28 U.S.C. § 1404(a).  The court denies both requests for reasons explained below.

#### A.      Motion to Recuse

Section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  But, "[t]he decision to recuse is committed to the sound discretion of the district court."  *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992) (citing *Hinman v. Rogers*, 831 F.2d 937, 938 (10th Cir. 1987)).  So, as the moving party here, plaintiff bears the substantial burden to demonstrate that the judicial officer assigned to this case is not impartial.  *Id.*

---

[6] Although plaintiff labels one of his claims against Mr. Nitz and Mr. Jackson as one for "false arrest," the claim's allegations reveal that this claim is really one for malicious prosecution.  "[T]he tort of malicious prosecution arises out of detention after the wrongful institution of legal process"; whereas, "the tort of false arrest/false imprisonment arises out of detention without legal process."  *Young v. Davis*, 554 F.3d 1254, 1257 (10th Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 389–90 (2007)).  Here, plaintiff alleges that Mr. Nitz and Mr. Jackson arrested him "by securing search warrants lacking probable cause."  Doc. 1 at 19.  Because plaintiff alleges that Mr. Nitz and Mr. Jackson had search warrants, he alleges a malicious prosecution claim and not a claim for false arrest.  *See Young*, 554 F.3d at 1257 (discussing what constitutes legal process in false arrest claims).

Judges apply an objective standard to determine whether to recuse. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 858 n.7 (1988). So, under § 455(a), the test is not whether the judge believes he or she is impartial, but, instead, "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993) (quoting *Burger*, 964 F.2d at 1070). But, § 455 "does not require recusal based only on assumptions about a judge's beliefs that are not substantiated by the facts of record." *In re McCarthey*, 368 F.3d 1266, 1269–70 (10th Cir. 2004) (first citing *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995); then citing *Bryce v. Episcopal Church*, 289 F.3d 648, 659–60 (10th Cir. 2002)). "A judge should not recuse . . . on unsupported, irrational, or highly tenuous speculation." *Hinman*, 831 F.2d at 939 (citations omitted).

Here, plaintiff states that he "cannot obtain a fair and impartial trial in the State of Kansas" because two of the defendants—Ms. Parker and Ms. Morehead—"are on the same team" as our court, creating a conflict of interest with "[e]very single [judicial] officer" in the District of Kansas. Doc. 54 at 1. Plaintiff also alleges that the U.S. Attorney's Office for the District of Kansas pays "the current judge," and so "U.S. Attorney Mr. Tom Beall, could potentially be calling the shots in" plaintiff's case. *Id.* But plaintiff points to no facts in the record that support these allegations. To be sure, the U.S. Attorney's Office maintains an office in or near each federal courthouse operated by the General Services Administration in the District of Kansas. But no reasonable observer could consider this presence as biasing the court in the U.S. Attorney's favor. And, the U.S. Attorney's Office does not pay District of Kansas judges. Daniel S. Holt, *Federal Judiciary Appropriations, 1792–2010* xi–xii (2012), http://www.fjc.gov/public/pdf.nsf/lookup/Appropriations.pdf/$file/Appropriations.pdf.

When considering a § 455 motion, the court asks "how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995) (citing *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990)).  Here, no reasonable observer could question the court's impartiality.  Plaintiff thus has not met his burden to show that recusal is warranted under § 455(a).

### B.    Motion to Transfer

Section 1404(a) provides that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The court has broad discretion under § 1404(a) to decide motions to transfer based on a case-by-case review of convenience and fairness.  *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).  As the moving party here, plaintiff bears the burden to show that transfer is appropriate under § 1404(a).  *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010).

When deciding whether to transfer an action under § 1404(a), the court should consider the following factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit*, 928 F.2d at 1516 (quoting *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).

None of these factors favor transfer. To the contrary, many of the factors counsel against transfer—plaintiff chose this forum and the witnesses and evidence are located in this district. And, although plaintiff claims that he cannot obtain a fair trial in this district, the court already has concluded that his allegations are conclusory and unfounded. Plaintiff thus has not met his burden to show that transfer is warranted under § 1404(a). Because plaintiff fails to meet his burden under either § 455(a) or § 1404(a), the court denies his Motion to Transfer Case.

## II.     Defendants' Motions to Dismiss

All four defendants have filed separate Motions to Dismiss plaintiff's claims against them. Plaintiff responded to none of these Motions and the time for doing so has elapsed.[7] So, consistent with D. Kan. Rule 7.4(b), the court will consider and decide defendants' Motions as uncontested. In these circumstances, the court ordinarily "will grant the motion[s] without further notice." D. Kan. Rule 7.4(b). Although the court could grant defendants' Motions under Rule 7.4(b) without further discussion, it also considers the Motions below and rules on their merits. *E.g.*, *Gee v. Towers*, No. 16-2407, 2016 WL 4733854, at *1 (D. Kan. Sept. 12, 2016) (dismissing complaint under D. Kan. Rule 7.4(b), but also considering motion to dismiss on its merits).

Defendants contend that Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) require dismissal of plaintiff's claims against them.[8] Defendants invoke Rule 12(b)(1) because, they contend, the court lacks subject matter jurisdiction to hear plaintiff's claims against them in their official capacities ("official-capacity claims"). Defendants invoke Rule 12(b)(6) because, they

---

[7] Although defendants filed separate Motions to Dismiss, their Motions rely on the same legal principles and arguments, making their Motions nearly identical. Because defendants' Motions are nearly identical, the court considers them together.

[8] Because the court decides defendants' Motions based on the Complaint and judicially noticeable facts alone, it does not address their arguments for summary judgment.

contend, plaintiff's Complaint fails to state a claim against them in their individual capacities ("individual-capacity claims"). The court considers defendants' arguments below.

### A.   Subject Matter Jurisdiction:  Official-Capacity Claims

#### 1.   Rule 12(b)(1) Motion to Dismiss Standard

The court must dismiss any case that it lacks subject matter jurisdiction to hear. Fed. R. Civ. P. 12(h)(3). The court must do so because "[a] court lacking jurisdiction cannot render judgment." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citing *Bradbury v. Dennis*, 310 F.2d 73, 74 (10th Cir. 1962)). The party who invokes the court's jurisdiction bears the burden to establish that jurisdiction in fact exists. *Id.* Here, that party is plaintiff.

Because defendants attack the Complaint's allegations of subject matter jurisdiction, the court "must accept the allegations in the complaint as true." *Holt*, 46 F.3d at 1002 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

#### 2.   Sovereign Immunity

Defendants assert that sovereign immunity bars plaintiff's official-capacity claims because, as employees of the United States government, they are immune from suit in federal court.

When a plaintiff sues a federal official in his or her official capacity, he sues the United States. *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001). Sovereign immunity bars suits against the United States, unless the United States has waived its immunity. *Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989). The United States has not waived its immunity in § 1985 or *Bivens* actions. *Fay v. United States*, 389 F. App'x 802, 803–04 (10th Cir. 2010).

Here, all defendants are federal officials:  two are Assistant U.S. Attorneys, one is a Postal Inspector, and the fourth is an IRS Agent.  The court thus dismisses plaintiff's § 1985 and *Bivens* official-capacity claims against them.  All that remains, then, are plaintiff's individual-capacity claims.

### B.       Failure to State a Claim:  Individual-Capacity Claims

Defendants next contend that plaintiff's individual-capacity claims are subject to dismissal under Rule 12(b)(6) for two reasons:  (1) the statute of limitations bars plaintiff's claims and (2) plaintiff fails to allege claims upon which relief can be granted.  The court considers defendants' arguments under the standard detailed in the following section.

### 1.       *Rule 12(b)(6) Motion to Dismiss Standard*

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual

support for *these* claims.'"  *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

On a motion to dismiss under Rule 12(b)(6)—like this one—the court assumes that the complaint's factual allegations are true.  *Id.* at 1263.  But it need not accept pure legal conclusions as true.  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to state a claim for relief.  *Iqbal*, 556 U.S. at 678.

### 2.     *Sua Sponte Considerations:  Prosecutorial Immunity*

Under 28 U.S.C. § 1915(e)(2)(B)(iii), the court may consider, sua sponte, whether any defendant is immune from suit when a plaintiff is granted *in forma pauperis* status.  The court granted plaintiff *in forma pauperis* status on March 17, 2016, and elects to exercise its authority under 28 U.S.C. § 1915(e)(2)(B)(iii) to consider whether prosecutorial immunity—an absolute immunity—bars plaintiff's malicious prosecution and retaliatory prosecution claims against the Prosecutors, Ms. Parker and Ms. Morehead.[9]  *E.g.*, *Sawyer v. Gorman*, 317 F. App'x 725, 726–28 (10th Cir. 2008) (affirming sua sponte dismissal under 28 U.S.C. § 1915(e)(2)(B)(iii)); *Fabritus v. United States*, 89 F.3d 849, 1996 WL 316464, at *2 (10th Cir. June 12, 1996) ("The emphasized language codifies the rule applicable to *in forma pauperis* cases that the district court may dismiss a claim *sua sponte* when 'it is clear the defendants are immune from suit.'  Indeed, . . . district courts are now obligated to dismiss such legally groundless claims." (quoting *Nietzke v. Williams*, 490 U.S. 319, 327 (1989))).

Prosecutorial immunity protects the Prosecutors from liability for initiating or presenting the government's case against a criminal defendant.  *Tripati v. INS*, 784 F.2d 345, 346–47 (10th Cir. 1986).  It does not protect them, however, from liability for primarily investigative or

---

[9] Ms. Parker makes a prosecutorial immunity argument in her Motion to Dismiss, but Ms. Morehead does not. Neither defendant mentions plaintiff's malicious prosecution and retaliatory prosecution claims, however, and so the court simply considers the issue sua sponte.

administrative tasks. *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991). So, to determine whether prosecutorial immunity applies, the court must ask whether plaintiff's Complaint seeks to hold the Prosecutors liable for merely initiating or presenting the government's case.

In his malicious prosecution claims, plaintiff alleges that the Prosecutors lacked probable cause to initiate all four criminal cases against him. His claims do not rely on any investigative or administrative action purportedly taken by the Prosecutors. Prosecutorial immunity thus bars plaintiff's malicious prosecution claims against the Prosecutors, and so the court dismisses those claims under 28 U.S.C. § 1915(e)(2)(B)(iii). *See Imbler v. Pachtman*, 424 U.S. 409, 427 (1976) (holding that prosecutors are immune, absolutely, from liability for malicious prosecution claims); *Butz v. Economou*, 438 U.S. 478, 504 (1978) (holding that officials sued in a *Bivens* action are entitled to the same immunities they would receive if sued under § 1983).

In his retaliatory prosecution claims, plaintiff alleges that the Prosecutors initiated the criminal charges against him to retaliate because he exercised his First Amendment rights and also because he accused several law enforcement officers of wrongdoing. His claims thus do not rely on any investigative or administrative action purportedly taken by the Prosecutors. Prosecutorial immunity thus bars plaintiff's retaliatory prosecution claims against the Prosecutors, and so the court dismisses those claims under 28 U.S.C. § 1915(e)(2)(B)(iii). *See Hartman v. Moore*, 547 U.S. 250, 261–62 (2006) ("A *Bivens* (or § 1983) action for retaliatory prosecution will not be brought against the prosecutor, who is absolutely immune from liability for the decision to prosecute." (citation and footnote omitted)).

3.      *Statute of Limitations*

Defendants next contend that plaintiff fails to state individual-capacity claims against them under *Bivens* or § 1985 because the applicable statute of limitations has run.  In analyzing this affirmative defense, the court assumes, without deciding, that plaintiff's claims are cognizable *Bivens* claims.

Though the statute of limitations is an affirmative defense, it may be "raised and resolved in the Rule 12(b) context" when "the critical dates appear[] plainly on the face" of a complaint because "the defense [also] appears plainly on the face of the complaint."  *Lee v. Rocky Mountain UFCW Unions & Emp'rs Tr. Pension Plan*, 13 F.3d 405, 1993 WL 482951, at *1 (10th Cir. 1993) (quoting *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965)); *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016).  But, this is true only when the dates that appear plainly in the complaint "make [it] clear that the right to be sued upon has been extinguished."  *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).  So, the court must determine (1) the appropriate statute of limitations and (2) whether the dates alleged in plaintiff's Complaint plainly show that the passage of time has extinguished his right to sue defendants.

Plaintiff's *Bivens* and § 1985 claims are governed by the two-year statute of limitations found in section 60-513 of Kansas Statutes Annotated.  *Wanjiku v. Johnson Cty.*, 173 F. Supp. 3d 1217, 1232 (D. Kan. 2016) (§ 1985); *Logan v. United States*, 272 F. Supp. 2d 1182, 1185 (D. Kan. 2003) (*Bivens*).  But, federal law controls when *Bivens* and § 1985 claims accrue.[10]  *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994); *Mitchell*

---

[10] Although federal law controls when a *Bivens* or § 1985 claim accrues, federal courts typically apply state-law tolling rules.  *Hardin v. Straub*, 490 U.S. 536, 538–39 (1989).  Three possible tolling rules could apply here: fraudulent concealment, continuing violation, and disability under Kan. Stat. Ann. § 60-515.  Plaintiff alleges no facts to support applying any of these rules.

*v. Acosta*, No. 99-3118-GTV, 2003 WL 22466186, at *4 (D. Kan. Sept. 16, 2003). Under federal law, it is possible for plaintiff's *Bivens* and § 1985 claims to accrue at different times, so the court considers plaintiff's claims separately below.

a.    <u>*Bivens* Claims</u>

"Under federal law, the statute of limitations on a *Bivens* claim 'begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action.'" *Van Tu v. Koster*, 364 F.3d 1196, 1199 (10th Cir. 2004) (quoting *Indus. Constructors Corp.*, 15 F.3d at 969). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Indus. Constructors Corp.*, 15 F.3d at 969 (citing *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687, 692 (10th Cir. 1981)). But, "[a] plaintiff need not know the full extent of his injuries before the statute of limitations begins to run." *Id.* (citations omitted).

Because plaintiff's *Bivens* claims do not accrue until he knows of or should have known of his injuries and their causes, the dates appearing in plaintiff's Complaint must clearly show that he discovered or should have discovered his *Bivens* claims before March 8, 2014—two years before plaintiff filed his Complaint here. *See McCormick v. Farrar*, No. 02-2037-GTV, 2003 WL 1697686, at *3 (D. Kan. Mar. 20, 2003) ("Thus, if a cause of action accrues on January 1, 2000, the first day to be counted for computing purposes is January 2, 2000. A two-year period beginning on January 2, 2000 . . . ends on January 1, 2002." (citations omitted)), *aff'd*, 147 F. App'x 716 (10th Cir. 2005). Otherwise, the face of plaintiff's Complaint does not "make clear that the right to be sued upon has been extinguished" and the court cannot use a Rule 12(b)(6) motion to decide defendants' statute-of-limitations defense. *Aldrich*, 627 F.2d at 1041 n.4. The

court addresses plaintiff's claims in the order he organizes them in his Complaint, in three groups:  (1) the Prosecutors, (2) Mr. Nitz, and (3) Mr. Jackson.

i.      The Prosecutors

Plaintiff alleges over a dozen claims against the Prosecutors.  But he does not organize them claim-by-claim.  Instead, plaintiff groups his claims into nine "counts."  The court's analysis below follows plaintiff's organization.

*Count One*

In count one, plaintiff alleges Fourth and Fifth Amendment violations based on search warrants that the Prosecutors relied on in all four of his federal criminal cases.  The statute of limitations bars these claims.

Plaintiff's claims accrued when the searches occurred.  *See Johnson v. Johnson Cty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) ("Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur."  (citation omitted)).  In his Complaint, plaintiff alleges that the Prosecutors relied on illegal search warrants executed on the following dates:  December 2, 2005; May 8, 2006; July 7, 2006; and "from 2006–2008."  Doc. 1 at 6 (emphasis omitted).  So, plaintiff's claims in count one accrued on these dates.

The limitations period for the search warrants that plaintiff provides a specific date for ran on the following dates:  December 2, 2007; May 8, 2008; and July 7, 2008.  And, assuming that the last search warrant executed in each year was executed on December 31, the limitations period on the search warrants that plaintiff alleges occurred between 2006 and 2008 ran on the following dates:  December 31, 2008; December 31, 2009; and December 31, 2010.  So, under even the most generous construction of the facts alleged in plaintiff's Complaint possible, the

statute of limitations ran for plaintiff's claims before March 8, 2016.  The court thus dismisses plaintiff's claims in count one.

*Count Two*

In count two, plaintiff alleges First and Fifth Amendment violations based on the temporary restraining order and competency hearings in his Money Laundering Case.  The statute of limitations bars these claims.

During the Money Laundering Case, the Prosecutors filed four motions to revoke plaintiff's bond.[11]  In their first motion—filed on May 1, 2008—the Prosecutors alleged that plaintiff's blog posts violated the terms of his pre-trial release.  Motion to Revoke Bond at 1–2, *United States v. Neighbors*, No. 07-cr-20124-CM (D. Kan. May 1, 2008), ECF No. 65.  But before our court ruled on this motion, the parties agreed to a temporary restraining order in exchange for the Prosecutors dropping their motion to revoke plaintiff's bond.  Order, *United States v. Neighbors*, No. 07-cr-20124-CM (D. Kan. July 30, 2008), ECF No. 118.  The agreed-to restraining order prohibited plaintiff from "making any statements, other than to members of the defendants' immediate family . . . , in writing, orally or by electronic dissemination, . . . which mentions the names of any witness, attorneys, potential witnesses, or of any persons associated with the investigation or prosecution" in either the Money Laundering or Obstruction Case.  *Id.* at 1–2.  Our court issued this agreed-to restraining order and stayed the motion to revoke plaintiff's bond on July 30, 2008.  *Id.* at 4.

On August 12, 2008, and September 25, 2008, the Prosecutors filed their second and third motions to revoke plaintiff's bond.  Second Motion to Revoke Bond, *United States v. Neighbors*,

---

[11] The facts in this section are taken from plaintiff's Complaint or from the records in plaintiff's four federal criminal cases.  *See supra* note 4.  To the extent that plaintiff's allegations contradict those records, the records control.  *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) ("Nor must we 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'"  (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001))).

No. 07-cr-20124-CM (D. Kan. Aug. 12, 2008), ECF No. 128; Renewed Motion to Revoke Defendant's Bond, *United States v. Neighbors*, No. 07-cr-20124-CM (D. Kan. Sept. 25, 2008), ECF No. 142.  They based their motions on plaintiff's failure to abide by the temporary restraining order.  Our court denied both motions.

On April 27, 2009, the Prosecutors filed their fourth and final motion to revoke plaintiff's bond.  Renewed Motion to Revoke Defendant's Bond, *United States v. Neighbors*, No. 07-cr-20124-CM (D. Kan. Apr. 27, 2009), ECF No. 165.  This motion, however, was not just a motion to revoke plaintiff's bond—it was a motion to revoke his bond or, in the alternative, to order a mental examination.  Our court granted the Prosecutors' motion to revoke plaintiff's bond on May 21, 2009, but denied their motion for a mental examination.

On August 10, 2009, the Prosecutors filed a motion asking our court to order a mental examination of plaintiff.  Judge Murgia granted their motion the next day.  Plaintiff was sent to a federal facility in Colorado to undergo the examination.  On December 9, 2009, Judge Murgia found plaintiff incompetent and ordered a follow-up mental exam.  Judge Murgia held a second competency hearing on June 23, 2010.  During this hearing, the doctor who conducted plaintiff's mental exam stated that he believed plaintiff was not competent to stand trial and suggested that plaintiff be medicated involuntarily.  Judge Murgia found plaintiff incompetent yet again.  Plaintiff appealed Judge Murgia's rulings to the Tenth Circuit several times.  Ultimately, Judge Murgia found plaintiff competent on August 29, 2011.  Minute Entry, *United States v. Neighbors*, No. 07-cr-20124-CM (D. Kan. Aug. 29, 2011), ECF No. 507.  Judge Murgia then released plaintiff from detention on September 6, 2011.  Order of Release, *United States v. Neighbors*, No. 07-cr-20124-CM (D. Kan. Sept. 6, 2011), ECF No. 509.

So, all of the conduct alleged in count two occurred between May 1, 2008 and September 6, 2011.  Plaintiff thus knew or should have known of his injuries and their causes on September 6, 2011, at the latest, rendering his March 8, 2016 Complaint here outside the two-year statute of limitations.  The court thus dismisses plaintiff's claims in count two.

*Count Three*

In count three, plaintiff alleges Fourth and Fifth Amendment violations based on the Prosecutors' conduct during his Controlled Substance Case.  The Prosecutors filed the Controlled Substance Case on June 20, 2007, and our court dismissed the case on November 29, 2011.  Plaintiff thus knew or should have known of his causes of action against the Prosecutors on November 29, 2011, at the latest, rendering his March 8, 2016 Complaint here outside the two-year statute of limitations.  The court thus dismisses plaintiff's claims in count three.

*Count Four*

In count four, plaintiff alleges Fourth and Fifth Amendment violations based on the Prosecutors' use of *lis pendens* liens in his Money Laundering Case.  The statute of limitations bars these claims.

In his Complaint, plaintiff alleges that these liens began on September 27, 2007, and that he never received notice of the liens.  Nonetheless, plaintiff should have known of his injuries and their causes, and indeed had actual knowledge of the *lis pendens* liens' existence, on September 13, 2007.  The indictment in the Money Laundering Case includes forfeiture provisions, which indicates that the Prosecutors intended to file *lis pendens* liens against plaintiff's residence and business property in Lawrence, Kansas.  Indictment at 16–17, *United States v. Neighbors*, No. 07-cr-20124-CM (D. Kan. Sept. 13, 2007), ECF No. 1.  Plaintiff thus had notice of the forfeiture action against him as of the date of the indictment—September 13,

2007.  *See United States v. Possick*, 849 F.2d 332, 340–41 (8th Cir. 1988) ("The language of the indictment is clear and put Possick on notice that his entire home was subject to forfeiture." (citations omitted)); *United States v. Lester*, No. 06-20151-JWL, 2008 WL 2152055, at *2 (D. Kan. May 21, 2008) ("The indictment and other pre-sentence proceedings gave defendant notice of the United States's intent to seek forfeiture of property.").  This renders plaintiff's March 8, 2016 Complaint here outside the two-year statute of limitations.  The court thus dismisses plaintiff's claims in count four.

*Count Five*

In count five, plaintiff alleges a First Amendment violation based on the Prosecutors' first motion to revoke his bond in the Money Laundering Case.  As discussed above, the Prosecutors filed this motion to revoke on May 1, 2008, and our court decided the motion on July 30, 2008.  Plaintiff thus knew or should have known of his injuries and their causes on July 30, 2008, at the latest.  This renders plaintiff's March 8, 2016 Complaint here outside the two-year statute of limitations.  The court thus dismisses plaintiff's claims in count five.

*Count Six*

In count six, plaintiff alleges a Fifth Amendment violation based on the Prosecutors' conduct during his Obstruction Case.  The Prosecutors filed the Obstruction Case on August 8, 2008, and our court dismissed the case on March 6, 2014.  Plaintiff thus knew or should have known of his injuries and their causes on March 6, 2014,[12] at the latest, rendering his March 8, 2016 Complaint here outside the two-year statute of limitations.  *See McCormick*, 2003 WL

---

[12] This date reflects the most liberal analysis available under the facts alleged in plaintiff's Complaint.  In reality, plaintiff's claims likely accrued when the Prosecutors filed the Obstruction Case on August 8, 2008.  *See Indus. Constructors Corp.*, 15 F.3d at 969 ("A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." (citing *Ohio*, 651 F.2d at 692)).  Therefore, the statute of limitations period for plaintiff's claims likely ended on August 8, 2010.

1697686, at *3 (explaining that courts calculate the limitations period from the day after the cause of action accrues).  The court thus dismisses plaintiff's claims in count six.

*Count Seven*

In count seven, plaintiff alleges a Fifth Amendment violation based on the Prosecutors' second motion to revoke his bond in the Money Laundering Case.  As discussed above, the Prosecutors filed this motion to revoke on August 12, 2008, and our court denied the motion on August 18, 2008.  Plaintiff thus knew or should have known of his injuries and their causes on August 18, 2008, at the latest, rendering his March 8, 2016 Complaint here outside the two-year statute of limitations.  The court thus dismisses plaintiff's claims in count seven.

*Count Eight*

In count eight, plaintiff alleges Fifth Amendment violations based on the Prosecutors' fourth motion to revoke his bond in the Money Laundering Case and their conduct during his Obstruction Case.  As discussed above, the Prosecutors filed their fourth motion to revoke plaintiff's bond on April 27, 2009, and our court granted the motion on May 21, 2009.  Plaintiff's claims based on this motion to revoke, then, accrued no later than May 21, 2009, and so the claims' statute of limitations period ran no later than May 21, 2011.  Plaintiff thus filed his March 8, 2016 Complaint here outside the two-year statute of limitations.

The Prosecutors filed the Obstruction Case on August 8, 2008, and our court dismissed the case on March 6, 2014.  Plaintiff's claims based on the Obstruction Case, then, accrued no later than March 6, 2014,[13] and so the claims' statute of limitations period ran no later than March 6, 2016.  Plaintiff thus filed his March 8, 2016 Complaint here outside the two-year statute of limitations.  The court dismisses plaintiff's claims in count eight.

---

[13] *See supra* note 12.

*Count Nine*

In count nine, plaintiff alleges a Fifth Amendment violation based on the Prosecutors' motion for an order requiring plaintiff to submit to a mental examination and the competency proceedings that followed the motion.  As discussed above, the competency proceedings in plaintiff's Money Laundering Case occurred between August 10, 2009 and September 6, 2011.  Plaintiff thus knew or should have known of his injuries and their causes on September 6, 2011, at the latest, rendering his March 8, 2016 Complaint here outside the two-year statute of limitations.  The court thus dismisses plaintiff's claims in count nine.

In sum, the court grants Ms. Parker and Ms. Morehead's motions to dismiss plaintiff's individual-capacity *Bivens* claims against them.

ii.     Mr. Nitz

Plaintiff alleges Fourth and Fifth Amendment violations as well as malicious prosecution claims against Mr. Nitz.  Plaintiff bases his claims against Mr. Nitz on his alleged role in securing and executing arrest and search warrants against plaintiff between July 7, 2006 and August 8, 2008.  Doc. 1 at 4–7, 10–11, 19.  Even under the most liberal interpretation, the face of plaintiff's Complaint shows that the statute of limitations bars his *Bivens* claims against Mr. Nitz.

Plaintiff's Fourth and Fifth Amendment claims accrued when the searches or arrests occurred.  *See Johnson*, 925 F.2d at 1301 ("Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur." (citation omitted)).  In his Complaint, plaintiff alleges that Mr. Nitz executed search or arrest warrants against him on the following dates:  July 7, 2006; June 25, 2007; and August 8, 2008.  Plaintiff's Fourth and Fifth Amendment claims thus accrued on these dates and their statute of limitations periods ran on:  July 7, 2008; June 25,

20

2009; and August 8, 2010.  Plaintiff thus filed his March 8, 2016 Complaint here outside the two-year statute of limitations, and so the court dismisses plaintiff's Fourth and Fifth Amendment claims against Mr. Nitz.

But plaintiff's malicious prosecution claims against Mr. Nitz accrued at a different time than his Fourth and Fifth Amendment claims.  Plaintiff's malicious prosecution claims accrued when "the criminal proceedings . . . terminated in [his] favor."  *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013) (first citing *Heck v. Humphrey*, 512 U.S. 477, 489 (1994); then citing *Robinson v. Maruffi*, 895 F.2d 649, 654–55 (10th Cir. 1990)).  Plaintiff alleges that Mr. Nitz obtained warrants for plaintiff's arrest, without probable cause, in the Controlled Substance Case and Obstruction Case.  Our court dismissed the Controlled Substance Case on November 29, 2011, and dismissed the Obstruction Case on March 6, 2014.  Plaintiff's malicious prosecution claims thus accrued on these dates and their statute of limitations periods expired on November 29, 2013, and March 6, 2016[14] respectively.  Plaintiff thus filed his March 8, 2016 Complaint here outside the two-year statute of limitations, and so the court dismisses plaintiff's malicious prosecution claims against Mr. Nitz.

### iii.    Mr. Jackson

Plaintiff alleges Fourth and Fifth Amendment violations as well as a malicious prosecution claim against Mr. Jackson.  Plaintiff bases his claims against Mr. Jackson on his role in securing and executing an arrest and search warrant against plaintiff on June 25, 2007.  Doc. 1 at 6–7, 19.  Even under the most liberal interpretation, the face of plaintiff's Complaint shows that the statute of limitations bars his *Bivens* claims against Mr. Jackson.

Plaintiff's Fourth and Fifth Amendment claims accrued when the search and arrest occurred.  *See Johnson*, 925 F.2d at 1301 ("Claims arising out of police actions toward a

---

[14] *See supra* note 12.

criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur." (citation omitted)). In his Complaint, plaintiff alleges that Mr. Jackson executed a search and arrest warrant against him on June 25, 2007. So, plaintiff's Fourth and Fifth Amendment claims against Mr. Jackson accrued on June 25, 2007, and their statute of limitations periods ran on June 25, 2009. Plaintiff thus filed his March 8, 2016 Complaint here outside the two-year statute of limitations, and so the court dismisses plaintiff's Fourth and Fifth Amendment claims against Mr. Jackson.

But plaintiff's malicious prosecution claim against Mr. Jackson accrued at a different time than his Fourth and Fifth Amendment claims. Plaintiff's malicious prosecution claim accrued when "the criminal proceedings . . . terminated in [his] favor." *Koopman*, 738 F.3d at 1194 (first citing *Heck*, 512 U.S. at 489; then citing *Maruffi*, 895 F.2d at 654–55). Plaintiff alleges that Mr. Jackson secured a warrant for plaintiff's arrest, without probable cause, in his Controlled Substance Case. Our court dismissed the Controlled Substance Case on November 29, 2011. So, plaintiff's malicious prosecution claim against Mr. Jackson accrued on November 29, 2011, and the limitations period ran on November 29, 2013. Plaintiff thus filed his March 8, 2016 Complaint here outside the two-year statute of limitations, and so the court dismisses plaintiff's malicious prosecution claim against Mr. Jackson.

In sum, the court grants Mr. Nitz and Mr. Jackson's motions to dismiss plaintiff's individual-capacity *Bivens* claims against them.

### b.    § 1985 Claim

"Section 1985 claims accrue on the date of the last overt act in furtherance of the conspiracy." *Yellowbear v. Newell*, 621 F. App'x 517, 520 n.5 (10th Cir. 2015) (citing *O'Connor v. St. John's Coll.*, 290 F. App'x 137, 141 (10th Cir. 2008)). So, for the face of

plaintiff's Complaint to "make clear that the right to be sued upon has been extinguished," the dates in the Complaint must state clearly that the last such act occurred before March 8, 2014—that is, two years before plaintiff filed his Complaint here.  *Aldrich*, 627 F.2d at 1041 n.4. Otherwise, the court cannot decide defendants' statute-of-limitations defense on a Rule 12(b)(6) motion.

Here, plaintiff's § 1985 claim against defendants is vague enough that the court cannot discern when the alleged conspiracy began, what events plaintiff alleges were part of the conspiracy, or when the conspiracy ended.  Because of this vagueness, the court cannot grant defendants' Rule 12(b)(6) motions based on the statute of limitations.  But, defendants also contend that plaintiff fails to allege facts supporting a claim for relief under § 1985.  The court considers this next argument in the following section.

### 4.      Failure to State a Claim

Defendants contend that plaintiff fails to allege facts that state a claim for relief under either § 1985(2) or § 1985(3).[15]  The court agrees.

To assert a plausible claim under § 1985(2), plaintiff must allege a conspiracy to intimidate or deter him from appearing in a judicial proceeding.  *See Hogan v. Winder*, 762 F.3d 1096, 1114 (10th Cir. 2014).  His Complaint does not sustain this duty.  Plaintiff's allegations, in general, tend to assert that a conspiracy to imprison him existed.  But he never alleges any facts suggesting that defendants conspired to prevent him from appearing in a judicial proceeding. The absence of such allegations means that plaintiff's Complaint fails to allege a plausible claim for relief under § 1985(2).  *See id.*  The court thus dismisses plaintiff's claims under 42 U.S.C. § 1985(2).

---

[15] Although plaintiff's Complaint does not specify which subsection of § 1985 he relies on, the court understands his Complaint to assert claims under § 1985(2)–(3).  Because plaintiff is not a federal official, he can't allege a claim under § 1985(1).  *See Hall v. Wilson*, No. 10-cv-01460-BNB, 2010 WL 3310357, at *2 (D. Colo. Aug. 18, 2010).

To assert a plausible claim under § 1985(3), plaintiff must allege a conspiracy based on racial animus. *See Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015), *cert. denied*, 137 S. Ct. 197 (2016). His Complaint does not sustain this duty. Although plaintiff alleges that he and his wife are a bi-racial couple, the Complaint never mentions plaintiff's race. Nor does the Complaint make any allegations that one could construe to suggest that defendants were motivated by racial animus. Indeed, plaintiff alleges that the Prosecutors' actions were motivated by their "outrage[] at . . . [his] allegations of Lawrence Police Officers posing as Federal Agents to gather evidence in petty cases against him." Doc. 1 at 20. So, plaintiff fails to allege a plausible claim under § 1985(3). The court thus dismisses plaintiff's claims under 42 U.S.C. § 1985(3).

### C.    Conclusion

For the reasons explained above, the court grants defendants' Motions to Dismiss. The court grants defendants' Motions to Dismiss under D. Kan. Rule 7.4(b) because plaintiff failed to respond to their Motions. But the court also grants defendants' Motions to Dismiss based on their merits, as discussed above.

The doctrine of sovereign immunity bars plaintiff's official-capacity claims against defendants, and prosecutorial immunity bars his malicious prosecution and retaliatory prosecution claims against the Prosecutors, Ms. Parker and Ms. Morehead. The applicable statute of limitations bars plaintiff's remaining individual-capacity *Bivens* claims against defendants. And, plaintiff fails to allege facts supporting his individual-capacity § 1985 claim against defendants. The court thus dismisses all of plaintiff's claims against defendants—Ms. Parker, Ms. Morehead,  Mr. Nitz, and Mr. Jackson.

### III.     Plaintiff's Motion for Review

On July 12, 2016, Magistrate Judge Sebelius granted Ms. Morehead's Motion to Stay Discovery.  Doc. 26.  Plaintiff filed a Motion for Review stating his objections to Judge Sebelius's Order on August 24, 2016.  Doc. 56.  The court denies plaintiff's Motion for Review for two reasons.  First, it is untimely.  *See* Fed. R. Civ. P. 72(a) (setting deadline to seek review of a magistrate's non-dispositive order at 14 days).  And second, plaintiff fails to persuade the court that it can set aside or modify Judge Sebelius's Order under Rule 72.

Under Rule 72(a), the court may review a magistrate judge's order granting a motion to stay discovery.  But the court may set aside or modify such an order only if it is "clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  Under the clearly erroneous standard, the district court does not conduct a de novo review of the factual findings; instead, it must affirm a magistrate judge's order unless a review of the entire evidence leaves it "with the definite and firm conviction that a mistake has been committed."  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  In contrast, the contrary-to-law standard permits the district court to conduct an independent review of the magistrate judge's purely legal determinations.  *Sprint Commc'ns Co. L.P. v. Vonage Holdings Corp.*, 500 F. Supp. 2d 1290, 1346 (D. Kan. 2007).  A magistrate judge's order is contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of procedure."  *Walker v. Bd. of Cty. Comm'rs of Sedgwick Cty.*, No. 09-1316-MLB, 2011 WL 2790203, at *2 (D. Kan. July 14, 2011) (citing *Botta v. Barnhart*, 475 F. Supp. 2d 174, 185 (E.D.N.Y. 2007)).

Here, plaintiff asserts, among other things, that Judge Sebelius's Order violated the Administrative Procedure Act, 5 U.S.C. §§ 500–96.  But that Act does not apply to these

proceedings, and, after reviewing Judge Sebelius's Order and the evidence plaintiff submitted to him, the court concludes that his decision was not clearly erroneous. Nor was Judge Sebelius's decision contrary to law. The court thus affirms Judge Sebelius's August 24, 2016 Order, and so denies plaintiff's Motion for Review.

**IV.    Plaintiff's Notice of Contractual Acceptance of Constitutions and Oath of Office**

On October 11, 2016, plaintiff filed a document entitled "Notice of Contractual Acceptance of Constitutions and Oath of Office." Doc. 88. This document is hard to follow and, frankly, the court is unsure of what plaintiff wishes to gain from it. Regardless of plaintiff's motive in filing this document, his attempt to bind the court and its officers to a contract through his "Notice of Contractual Acceptance of Constitutions and Oath of Office" has no legal effect or consequence in this action.

**IT IS THEREFORE ORDERED THAT** plaintiff's Motion to Transfer Case (Doc. 54) is denied.

**IT IS FURTHER ORDERED THAT** defendant Terra Morehead's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 17) is granted.

**IT IS FURTHER ORDERED THAT** defendant Marietta Parker's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 74) is granted.

**IT IS FURTHER ORDERED THAT** defendant Robert Jackson's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 78) is granted.

**IT IS FURTHER ORDERED THAT** defendant David Nitz's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 81) is granted.

**IT IS FURTHER ORDERED THAT** defendant plaintiff's Motion for Review (Doc. 56) is denied as moot.

IT IS SO ORDERED.

Dated this 30th day of January, 2017, at Topeka, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge